IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.: 1:17-CV-01636-WJM-MJW

DIGITALGLOBE, INC., a Delaware corporation, and
DIGITALGLOBE INTELLIGENCE SOLUTIONS, INC., a Delaware corporation,

    Plaintiffs,

v.

LOU PALADINO, an individual

    Defendant.

## AMENDED COMPLAINT AND JURY DEMAND

Plaintiffs, DigitalGlobe, Inc. and DigitalGlobe Intelligence Solutions, Inc. ("DGIS") (collectively, "DigitalGlobe"), through counsel, Brownstein Hyatt Farber Schreck, LLP, submits the following Amended Complaint and Jury Demand against Defendant Lou Paladino:

### NATURE OF THE ACTION

Mr. Paladino is a former employee and high-level manager at DigitalGlobe. As a condition of his employment, and in exchange for certain equity compensation, Mr. Paladino executed several binding and enforceable contracts for the protection of DigitalGlobe's confidential and proprietary information. Yet while Mr. Paladino was still employed at DigitalGlobe, he engineered a plan to divert work from DigitalGlobe to one of DigitalGlobe's major competitors. Mr. Paladino is now working for this competitor and has been actively soliciting other DigitalGlobe employees to leave DigitalGlobe to work with Mr. Paladino at this competitor. Mr. Paladino's conduct violates a host of contractual, statutory, and common law

duties that Mr. Paladino owed and continues to owe to DigitalGlobe as a prior employee and manager.

## PARTIES

1. Plaintiff DigitalGlobe, Inc. is a Delaware corporation with its principal place of business in Westminster, Colorado.

2. Plaintiff DigitalGlobe Intelligence Solutions, Inc. is a Delaware corporation with its principal place of business in Herndon, Virginia.

3. Upon information and belief, Defendant Lou Paladino is an individual residing at 6812 6th Street NW, Washington, DC 20012.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction under 28 U.S.C. § 1332 because this is an action between citizens of different states and the amount in controversy exceeds $75,000.

5. Among other things, this action seeks to enforce certain binding contracts between DigitalGlobe and Mr. Paladino, including: (i) the Employee Invention, Confidential Information, Noncompetition and Non-Solicitation Agreement (the "Non-Competition Agreement"); (ii) the DigitalGlobe, Inc. 2007 Employee Stock Option Plan, as restated on February 17, 2016 (the "Stock Option Plan"); and (iii) the Employee Non-Disclosure Agreement (the "Non-Disclosure Agreement"). A true and correct copy of the Non-Competition Agreement is attached as **Exhibit 1**; a true and correct copy of the Stock Option Plan is attached as **Exhibit 2**, and a true and correct copy of the Non-Disclosure Agreement is attached as **Exhibit 3**.

6. In Section 9(f) of the Non-Competition Agreement, the Parties agreed that "[a]ny disputes under this Agreement must be brought in the appropriate state courts for the State of

Colorado, or the U.S. District Court for the District of Colorado." Additionally, in Section 9(f), Mr. Paladino explicitly consented to personal jurisdiction and venue in this Court. The Non-Competition Agreement further states that it is subject to Colorado law. The Stock Option Plan is also expressly subject to Colorado law.

7. Mr. Paladino is further subject to the personal jurisdiction of this Court because he has violated duties owed as an employee of a Colorado-based corporation, and he has taken intentional actions deliberately aimed at DigitalGlobe, knowing it was headquartered in Colorado and knowing that the brunt of the injury would be felt in Colorado.

8. Venue is proper in this judicial district because Section 9(f) of the Parties' binding and enforceable Non-Competition Agreement provides that the U.S. District Court for the District of Colorado is a proper venue for any disputes arising from that agreement.

9. Accordingly, this Court has jurisdiction over this matter and venue is proper in this district.

## GENERAL ALLEGATIONS

10. DigitalGlobe, Inc. is a leading provider of commercial high-resolution Earth observation and advanced geospatial solutions.

11. DGIS is a subsidiary of DigitalGlobe, Inc. DGIS is an industry leader in processing and analyzing satellite imagery and other voluminous data. DGIS is part of the "services" branch of DigitalGlobe, Inc.'s business.

12. Mr. Paladino is a former managerial-level employee of DigitalGlobe. In his position at DigitalGlobe, Mr. Paladino managed a team of approximately thirty employees on projects generating multimillion-dollar annual revenues. He served in a managerial and

3

supervisory capacity and had access to the highest levels of DigitalGlobe's confidential and proprietary information.

### The Non-Competition Agreement

13. As a condition of Mr. Paladino's employment, the Parties executed the Non-Competition Agreement, **Exhibit 1.** Mr. Paladino electronically agreed to the terms of the Non-Competition Agreement on or about February 4, 2013.

14. In Section 1 of the Non-Competition Agreement, Mr. Paladino acknowledged that he would have access to certain confidential trade secrets and proprietary business information of DigitalGlobe (the "Confidential Information").

15. In Section 6 of the Non-Competition Agreement, Mr. Paladino agreed that, for a period of twelve months after the termination of his employment, he would not "compete for any reason with [DigitalGlobe] in its direct business lines . . . by directly or indirectly taking any of the following actions: (a) owning, managing, operating, joining, controlling or providing services to any entity . . . that engages in or is seeking to engage in the current or planned business activities of [DigitalGlobe]; (b) serving as an employee, agent, consultant, officer, or director of any such entity; or (c) inducing or attempting to induce any customer, supplier, or business relation of [DigitalGlobe] to cease doing business with [DigitalGlobe], or in any other way interfering with the relationship between any customer, supplier or business relation and [DigitalGlobe]."

16. Mr. Paladino expressly acknowledged in Section 7 of the Non-Competition Agreement that the restrictions stated in Section 6 are reasonable and necessary to protect DigitalGlobe's Confidential Information.

17. Mr. Paladino also agreed in Section 8 of the Non-Competition Agreement that for a period of one year after termination of his employment with DigitalGlobe, he would not "directly or indirectly, recruit, solicit, attempt to persuade, or assist in the recruitment or solicitation of, any employee of [DigitalGlobe] who was an employee, officer or agent of [DigitalGlobe] during the three month period immediately preceding the date of termination of [his] employment, for the purpose of employing him or her or obtaining his or her services or otherwise causing him or her to leave his or her employment with [DigitalGlobe]."

18. Mr. Paladino acknowledged in Section 9(e) of the Non-Competition Agreement that DigitalGlobe would suffer irreparable harm from any violation of the Non-Competition Agreement and agreed that DigitalGlobe shall be entitled to injunctive relief in the event of violation or threatened violation of the Non-Competition Agreement.

19. Mr. Paladino entered into the Non-Competition Agreement as an executive or management employee, as defined in C.R.S. § 8-2-113(2)(d).

20. The purpose of the Non-Competition Agreement was, in part, to protect DigitalGlobe's Confidential Information.

**The Stock Option Plan**

21. Mr. Paladino has been granted DigitalGlobe stock as equity compensation on at least four occasions, as follows:

| Grant Date | Granted Quantity | Shares Vested |
|---|---|---|
| 07/24/2013 | 456 | 342 |
| 02/05/2014 | 536 | 402 |
| 02/18/2015 | 1,496 | 748 |
| 02/17/2016 | 3,003 | 751 |

22. The estimated market value of the shares vested to date totals approximately $75,000.

23. As a condition of Mr. Paladino's receipt of these DigitalGlobe shares, on each of these occasions, Mr. Paladino executed a Restricted Share Unit Award Agreement ("RSU Agreement"). On each occasion, the RSU Agreement specified that the award of shares was subject to Colorado law and to the terms and conditions of the Stock Option Plan, **Exhibit 2**.

24. Section 24 of the Stock Option Plan permits DigitalGlobe to "rescind any exercise, payment, or delivery pursuant to the Award ('Rescission'), or recapture any Common Stock (whether restricted or unrestricted) or proceeds from [Mr. Paladino's] sale of Shares issued pursuant to the Award ('Recapture'), if [Mr. Paladino] does not comply with [Sections 24(b), 24(c), or 24(d)]."

25. Section 24(b) of the Stock Option Plan requires a participant in the plan to preserve all Confidential Information received from DigitalGlobe—including "current and prospective customers; the identity of key contacts at such customers; customers' particularized preferences and needs; marketing strategies and plans; financial data; personnel data; compensation data; proprietary procedures and processes; and other unique and specialized practices, programs and plans of [DigitalGlobe] and it customers and prospective customers"—and further specifies that Mr. Paladino shall not "divulge such Confidential Information or make use of it for his or her own purposes or the purposes of any person or entity other than [DigitalGlobe]."

26. Section 24(d) of the Stock Option Plan prohibits Mr. Paladino from competing with the Company for one year after termination of employment, and prohibits Mr. Paladino

6

from soliciting the services of other DigitalGlobe employees for two years after leaving. The provision states in relevant part:

> Each Participant agrees that . . . for a period beginning on the date of grant of each Award and ending (i) 1 year after termination of Continuous Service, regardless of the reason for such termination, he or she shall not, directly or indirectly . . . market, offer, sell or otherwise furnish any products or services similar to, or otherwise competitive with, those offered by [DigitalGlobe] to any customer of [DigitalGlobe]; and (ii) 2 years after termination of Continuous Service, regardless of the reason for such termination, he or she shall not, directly or indirectly, solicit, offer employment to, hire or otherwise retain the services of any employee or other service provider of [DigitalGlobe].

27.     Section 24(f) of the Stock Option Plan provides that DigitalGlobe "may, in its sole and absolute discretion, impose a Termination, Rescission or Recapture with respect to any or all of [Mr. Paladino's] relevant Awards, Shares, and the proceeds thereof," if DigitalGlobe "in its sole and absolute discretion" determines that Mr. Paladino has violated any of the conditions of the Stock Option Plan, including the non-solicitation and non-competition provisions outlined in Sections 24(b) and (c).

28.     Mr. Paladino accepted these equity compensation awards subject to the terms of the Stock Option Plan as an executive or management employee, as defined in C.R.S. § 8-2-113(2)(d).

29.     The purpose of the non-competition and non-solicitation provisions of the Stock Option Plan was, in part, to protect Digital Globe's Confidential Information.

**The Non-Disclosure Agreement**

30.     As a condition of his employment, Mr. Paladino executed the Non-Disclosure Agreement, **Exhibit 3**, with DigitalGlobe's predecessor GeoEye Analytics, Inc. ("GeoEye").

7

31. DigitalGlobe acquired GeoEye in 2012, and as a consequence of that acquisition, DigitalGlobe succeeded GeoEye as to its rights as Mr. Paladino's employer under the Non-Disclosure Agreement.

32. In Section D of the Non-Disclosure Agreement, Mr. Paladino agreed "not to solicit for employment (or to assist with such solicitation), or to hire (including employment as a full-time or part-time employee or as a consultant) any employee of the Company for a one-year period after the termination of Employee's employment with the Company for any reason."

33. In Section E of the Non-Disclosure Agreement, Mr. Paladino agreed that "[f]or a one-year period after the termination of Employee's employment with the Company for any reason, [Mr. Paladino would not] solicit for advancing like products or services (or to assist with such solicitation) any customer or client of the Company with whom the Employee had dealings or about whom the Employee acquired proprietary information during his or her employment."

34. Section F of the Non-Disclosure Agreement provides: "Because of the unique nature of the Proprietary Information and employee and customer relationships, the Employee understands and agrees that the Company will suffer irreparable harm in the event that the Employee fails to comply with any of his or her obligations under Sections B, C, D, and E above and that monetary damages will be inadequate to compensate the Company for such breach. Accordingly, the Employee agrees that the Company will, in addition to any other remedies available to them at law or equity, be entitled to injunctive relief to enforce the terms of Sections B, C, D, and E."

35. Mr. Paladino entered into the Non-Disclosure Agreement as an executive or management employee, as defined in C.R.S. § 8-2-113(2)(d).

36. The purpose of the Non-Disclosure Agreements was, in part, to protect Digital Globe's Confidential Information.

### **Mr. Paladino's Breach of the Agreements and Tortious Conduct**

37. While still employed by DigitalGlobe, Mr. Paladino carried out a plan to divert DigitalGlobe work and corporate opportunities for his own purposes.

38. While he was still employed by DigitalGlobe, Mr. Paladino was instrumental in diverting work DigitalGlobe was performing for the United States government to BigBear, Inc. ("BigBear"), a direct competitor of DigitalGlobe.

39. In particular, Mr. Paladino communicated with a government representative who was a key contact point and decision-maker for the United States government regarding the work DigitalGlobe was performing on its behalf. Upon information and belief, through these communications, Mr. Paladino deliberately sought to divert work from DigitalGlobe to BigBear while Mr. Paladino was still employed by DigitalGlobe.

40. In or around June of 2017, Mr. Paladino began working for BigBear.

41. In his employment with BigBear, Mr. Paladino has been specifically engaged to perform work for the United States government that was previously performed by DigitalGlobe, at least in part under Mr. Paladino's supervision.

42. While employed at DigitalGlobe and after his termination, Mr. Paladino has actively solicited DigitalGlobe employees to terminate their employment with DigitalGlobe and begin employment at BigBear.

43. For example, Paladino met with a DigitalGlobe employee and the President of BigBear at a brewery for the purpose of recruiting that employee to work at BigBear.

9

44. Paladino has communicated to certain DigitalGlobe employees his intention to start his own company, after a short stint with BigBear, to perform the United States government work that was previously performed by DigitalGlobe.

45. Mr. Paladino has solicited and attempted to recruit a number of DigitalGlobe employees to leave DigitalGlobe and work on the United States government project at BigBear and/or at Mr. Paladino's anticipated new venture.

46. Two former DigitalGlobe employees have recently left DigitalGlobe's employment, and have indicated to DigitalGlobe their intention to begin work with Mr. Paladino at BigBear.

47. Both of the DigitalGlobe employees who have already left to go to BigBear are also subject to contractual Non-Disclosure Agreements not to solicit DigitalGlobe customers or employees, and not to disclose or use DigitalGlobe confidential information.

48. Several other employees have indicated their intention to leave DigitalGlobe to work with Mr. Paladino at BigBear.

49. Most or all of the DigitalGlobe employees solicited by Mr. Paladino are also subject to contractual agreements not to compete, not to solicit DigitalGlobe employees, and to preserve DigitalGlobe confidential information.

50. By correspondence from its counsel dated June 23, 2017, DigitalGlobe advised Mr. Paladino that his conduct was in breach of his contractual agreements not to compete with DigitalGlobe and not to solicit other DigitalGlobe employees.

51. Within two business days of that correspondence, Mr. Paladino responded with additional communications to DigitalGlobe employees referring to his dispute with DigitalGlobe,

for the purpose of encouraging certain DigitalGlobe employees to leave the company and join Mr. Paladino at BigBear.

52. Mr. Paladino has violated the terms of the above-mentioned Agreements in multiple ways:

    a. Mr. Paladino has made use of DigitalGlobe's Confidential Information for the benefit of BigBear, a direct competitor of DigitalGlobe.

    b. Mr. Paladino has made use of DigitalGlobe's Confidential Information for his own benefit.

    c. Mr. Paladino has acted in competition with DigitalGlobe while still employed by DigitalGlobe and after his termination by diverting DigitalGlobe business to BigBear.

    d. Mr. Paladino has acted in competition with DigitalGlobe by performing services for BigBear or its customer, competitive with services provided by DigitalGlobe.

    e. Mr. Paladino has actively solicited other employees of DigitalGlobe to cease working for DigitalGlobe and instead work for BigBear and/or for an anticipated venture of his own.

53. Mr. Paladino has also breached his duty of loyalty to DigitalGlobe by directly competing with DigitalGlobe while still employed by DigitalGlobe, by acting to usurp DigitalGlobe corporate opportunities for himself or for a DigitalGlobe competitor, by soliciting DigitalGlobe's customers and employees while still employed by DigitalGlobe, and by failing to act solely for the benefit of DigitalGlobe in all matters connected to Mr. Paladino's employment.

54. As outlined and agreed to in the Non-Competition Agreement and Non-Disclosure Agreement, Mr. Paladino's conduct has caused and will continue to cause DigitalGlobe irreparable harm for which there is no adequate remedy at law, entitling DigitalGlobe to injunctive relief.

## FIRST CLAIM FOR RELIEF

### (Breach of the Non-Competition Agreement)

55. DigitalGlobe incorporates the allegations above as if fully stated in this paragraph.

56. The Non-Competition Agreement is an enforceable contract between DigitalGlobe and Mr. Paladino.

57. The non-competition provisions within the Non-Competition Agreement constitute valid and enforceable covenants not to compete pursuant to C.R.S. § 8-2-113(2). Mr. Paladino was an executive or management employee within the meaning of C.R.S. § 8-2-113(2)(d), and the purpose of the non-competition covenants was and is to protect DigitalGlobe's Confidential Information, including trade secrets, and the covenant is reasonably limited in scope to the protection of that Confidential Information.

58. As a condition of his employment, Mr. Paladino agreed that he would not work for a competitor, solicit DigitalGlobe's employees, or solicit DigitalGlobe's customers during and after termination of his employment.

59. Mr. Paladino agreed that the non-competition and non-solicitation covenants within the Non-Competition Agreement were reasonable and that a violation of those provisions would cause DigitalGlobe irreparable harm.

60. Mr. Paladino breached the Non-Competition Agreement by soliciting DigitalGlobe's customers and employees and by working for a direct competitor of DigitalGlobe immediately after his termination.

61. DigitalGlobe performed its part of the Agreement or was excused from such performance.

62. As a result of Mr. Paladino's breaches, DigitalGlobe is entitled to injunctive relief and monetary damages from Mr. Paladino in an amount to be proven at trial. DigitalGlobe is also "entitled to recover all of its legal fees and all other expenses of litigation" pursuant to Section 9(e) of the Non-Competition Agreement.

63. All conditions precedent, concurrent, or subsequent to DigitalGlobe's rights and ability to bring this claim have taken place, have otherwise been met, have been waived, or have otherwise been excused.

## SECOND CLAIM FOR RELIEF

### (Breach of the Stock Option Plan)

64. DigitalGlobe incorporates the allegations above as if fully stated in this paragraph.

65. The Stock Option Plan is an enforceable contract between DigitalGlobe and Mr. Paladino.

66. The non-competition provisions within the Stock Option Plan constitute valid and enforceable covenants not to compete pursuant to C.R.S. § 8-2-113(2). Mr. Paladino was an executive or management employee within the meaning of C.R.S. § 8-2-113(2)(d), and the purpose of the non-competition covenants was and is to protect DigitalGlobe's Confidential Information, including trade secrets, and the covenant is reasonably limited in scope to the protection of that Confidential Information.

67. As a condition of Mr. Paladino's receipt of DigitalGlobe stock, Mr. Paladino agreed that he would not work for a competitor, solicit DigitalGlobe's employees, or solicit DigitalGlobe's customers during and after termination of his employment.

68. Mr. Paladino breached the Non-Competition Agreement by soliciting DigitalGlobe's customers and employees and by working for a direct competitor of DigitalGlobe immediately after his termination.

69. DigitalGlobe performed its part of the Agreement or was excused from such performance.

70. As a result of Mr. Paladino's breaches, DigitalGlobe is entitled to Rescission and/or Recapture of Mr. Paladino's stocks, as provided in the Stock Option Plan and monetary damages from Mr. Paladino in an amount to be proven at trial.

71. All conditions precedent, concurrent, or subsequent to DigitalGlobe's rights and ability to bring this claim have taken place, have otherwise been met, have been waived, or have otherwise been excused.

## THIRD CLAIM FOR RELIEF

### (Breach of the Non-Disclosure Agreement)

72. DigitalGlobe incorporates the allegations above as if fully stated in this paragraph.

73. The Non-Disclosure Agreement is an enforceable contract between DigitalGlobe and Mr. Paladino.

74. The non-competition provisions within the Non-Disclosure Agreement constitute valid and enforceable covenants not to compete pursuant to C.R.S. § 8-2-113(2). Mr. Paladino was an executive or management employee within the meaning of C.R.S. § 8-2-113(2)(d), and the purpose of the non-competition covenants was and is to protect DigitalGlobe's Confidential

Information, including trade secrets, and the covenant is reasonably limited in scope to the protection of that Confidential Information.

75. As a condition of his employment, Mr. Paladino agreed that he would not work for a competitor, solicit DigitalGlobe's employees, or solicit DigitalGlobe's customers during and after termination of his employment.

76. Mr. Paladino agreed that the non-competition and non-solicitation covenants within the Non-Disclosure Agreement were reasonable and that a violation of those provision would cause DigitalGlobe irreparable harm.

77. Mr. Paladino breached the Non-Disclosure Agreement by soliciting DigitalGlobe's customers and employees and by working for a direct competitor of DigitalGlobe immediately after his termination.

78. DigitalGlobe performed its part of the Agreement or was excused from such performance.

79. As a result of Mr. Paladino's breaches, DigitalGlobe is entitled to injunctive relief and monetary damages from Mr. Paladino in an amount to be proven at trial.

80. All conditions precedent, concurrent, or subsequent to DigitalGlobe's rights and ability to bring this claim have taken place, have otherwise been met, have been waived, or have otherwise been excused.

### FOURTH CLAIM FOR RELIEF

### (Breach of the Duty of Loyalty)

81. DigitalGlobe incorporates the allegations above as if fully stated in this paragraph.

82. As DigitalGlobe's employee, Mr. Paladino had a duty of loyalty to act solely for the benefit of DigitalGlobe in all matters connected with Mr. Paladino's employment.

83. Mr. Paladino breached that duty of loyalty by, among other things, usurping DigitalGlobe corporate opportunities and by directly soliciting DigitalGlobe's customers and employees while still employed at DigitalGlobe.

84. Mr. Paladino's breach of his duty of loyalty has directly caused DigitalGlobe damages.

## FIFTH CLAIM FOR RELIEF

### (Declaratory Relief)

81. DigitalGlobe incorporates the allegations above as if fully stated in this paragraph

82. Pursuant to the Stock Option Plan, DigitalGlobe is entitled to take possession of all DigitalGlobe shares acquired by Mr. Paladino pursuant to the Stock Option Plan (the "Shares").

83. The Stock Option Plan explicitly provided that DigitalGlobe may Recapture or Rescind the Shares if DigitalGlobe finds, in its sole discretion, that certain terms and conditions of the Stock Option Plan have been violated.

84. Mr. Paladino violated the terms of the Stock Option Plan by, among other things, using DigitalGlobe's Confidential Information for Mr. Paladino's own benefit, acting in competition with DigitalGlobe while still employed by Digital Globe, acting in competition with DigitalGlobe by working for DigitalGlobe's direct competitor, and actively soliciting DigitalGlobe's employees.

85. DigitalGlobe sent a letter to Mr. Paladino on June 23, 2017 providing Mr. Paladino with ten (10) days to deliver the Shares or any gain realized or payment received from

sale of the Shares. Ten days has passed and the Shares are being detained by Mr. Paladino against DigitalGlobe's claim of right to possession of the Shares.

86. DigitalGlobe is entitled to declaratory relief that it is entitled to invoke Paragraph 24 of the Stock Option Plan and Recapture and/or Rescind the Shares.

87. DigitalGlobe is further entitled to declaratory relief that Mr. Paladino must deliver the Shares to DigitalGlobe or repay the fair market value of the Shares.

88. There is no other person or entity with a superior right to, or possessory interest in the Shares.

## PRAYER FOR RELIEF

WHEREFORE, DigitalGlobe respectfully requests that this Court enter judgment in its favor, and against Defendant, for the following:

A. Injunctive relief enjoining Mr. Paladino from working for BigBear, enjoining Mr. Paladino from starting his own competing venture, enjoining Mr. Paladino from soliciting DigitalGlobe's employees and customers, and enjoining Mr. Paladino from using and/or sharing DigitalGlobe's Confidential Information.

B. Damages in an amount to be proven at trial;

C. Declaratory relief declaring that Mr. Paladino must deliver his rescinded or recaptured Shares to DigitalGlobe or repay the fair market value of the Shares;

D. Attorneys' fees, interest, costs, and expenses, including expert witness fees; and

E. Any other relief that this Court deems just and proper.

## **Jury Demand**

DigitalGlobe demands a trial by jury.

Dated this 2nd day of August, 2017.

        BROWNSTEIN HYATT FARBER SCHRECK, LLP

        By: *s/John V. McDermott*
           John V. McDermott, #11854
           Van Aaron Hughes, #19812
           Craig M. Finger, #50134

        ATTORNEYS FOR PLAINTIFFS DIGITALGLOBE, INC. AND DIGITALGLOBE INTELLIGENCE SOLUTIONS, INC.