**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 17-cv-1636-WJM-MJW

DIGITALGLOBE, INC., a Delaware corporation, and
DIGITALGLOBE INTELLIGENCE SOLUTIONS, INC., a Delaware corporation,

    Plaintiffs,

v.

LOUIS PALADINO, an individual,

    Defendant.

---

## ORDER REQUIRING FURTHER BRIEFING

Before the Court is Plaintiffs' Renewed Motion for Preliminary Injunction. (ECF No. 25.) As the Court stated at the conclusion of yesterday's preliminary injunction hearing ("Hearing"), the Court requires further briefing. Accordingly, on or before **September 8, 2017**, the parties shall each submit a brief of no more than 20 pages (exclusive of signature block and certificate of service) addressing the following matters:

    **1.**    Plaintiffs shall answer the following questions:[1]

        **a.**    What specific "Business Confidential Information" (as that term is used in Plaintiffs' Exhibit 1) does Defendant possess, in what specific way(s) can Defendant make use of this Business Confidential Information while employed at BigBear, and which Hearing witness(es) testified to the foregoing?

---

[1] Defendant is free to anticipate and preemptively refute Plaintiffs' expected responses, but only Plaintiffs are required to respond to questions 1(a)–(f).

**b.** What items of Business Confidential Information, as enumerated in the previous question, qualify as "trade secrets" under Colorado law? Cite applicable authority.

**c.** How is the secrecy of purported trade secrets preserved in an environment like DRI-7, which comprises contractors from multiple companies (and where, for example, the various contractors are given a DIA e-mail address that remains with them even if they begin working for another of those contractors, and as a consequence, information may freely be exchanged with third parties even within the confines of this single e-mail domain)?

**d.** Assuming the Court grants a noncompetition injunction, the Court is skeptical that the language of Exhibit 1, § 6 ("direct business lines, including, but not limited to, satellite and aerial imagery operations, product distribution, mapping and other value added services") is sufficiently specific and unambiguous to describe "the act or acts restrained or required." Fed. R. Civ. P. 65(d)(1)(C). The Court is also concerned that the scope apparently suggested by Exhibit 1, § 6, is unduly broad under the circumstances. What specific injunction language would adequately protect Plaintiffs from competition they would not otherwise face during the one-year term of noncompetition, without entirely barring Paladino from employment in the satellite mapping industry?

**e.** Assuming the Court grants a nonsolicitation injunction, what specific language would satisfy Rule 65(d)(1)(C)?

**f.** Assuming the Court grants a nondisclosure injunction, what specific language would satisfy Rule 65(d)(1)(C)?

**2.** Federal courts sitting in diversity are not bound by the decisions of state intermediate appellate courts. *See Clark v. State Farm Mut. Auto. Ins. Co.*, 319 F.3d 1234, 1240–41 (10th Cir. 2003). Out of comity, such decisions are normally followed as if binding, but they may be ignored when the federal court concludes that the intermediate appellate court decided the question contrary to the likely holding of the state's highest court. This Court has serious concerns regarding the holding in *Phoenix Capital, Inc. v. Dowell*, 176 P.3d 835 (Colo. App. 2007), that Colorado Revised Statute § 8-2-113(2)(d) applies only when an employee occupies the relevant position at the time he or she signed the noncompete agreement. Among other things, the Court sees little public policy sense in a construction that would appear to preclude a court from considering the experience and expertise of a separating managerial-level employee who executed such an agreement as entry-level employee with little or no company or industry information or knowledge. Has any other state court (or federal court sitting in diversity) interpreted that state's analogous law in a manner consistent with *Phoenix Capital*'s interpretation of Colorado law? Has any other state court (or federal court sitting in diversity) rejected such an interpretation under that state's analogous law?

**3.** If the Court grants a preliminary injunction, the bond requirement will *not* be waived. Given that, what amount of bond should be required, and why?

**4.** If BigBear begins to pursue sole-source contracts from DIA, would BigBear be in competition with DGIS (whether directly or indirectly)?

**5.** The Court's research regarding irreparable harm shows that, until very recently, most courts simply *assumed* irreparable harm in noncompetition cases. The Court understands *Diné Citizens Against Ruining Our Environment v. Jewell*, 839 F.3d

1276, 1282 (10th Cir. 2016), to abrogate all such assumptions.  What specific *evidence* has been sufficient in previous cases for a court to find irreparable harm in noncompetition and similar contexts (*e.g.*, nondisclosure, exclusivity agreements, etc.)?

**6.**	In a noncompetition or similar context, does irreparable harm encompass a "head start" theory?  For example, if, during the one-year noncompete term at issue here, BigBear secures no business for which DGIS is qualified, but Defendant's efforts at BigBear during that one year make BigBear more competitive vis-à-vis DGIS for opportunities arising *after* the year expires, may it be deemed to be irreparable harm?  Cite supporting case law.

Dated this 31st day of August, 2017.

BY THE COURT:

_____
William J. Martinez
United States District Judge